# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JULIO CESAR GUTIERREZ-JARAMILLO,: | Civil No. 3:15-cv-1832 |
| Petitioner | (Judge Mariani) |
| v. | |
| WARDEN S. SPAULDING, | |
| Respondent | |

## MEMORANDUM

Petitioner, Julio Cesar Gutierrez-Jaramillo, an inmate currently confined at the Federal Correctional Institution, Gilmer, in Glenville, West Virginia, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging his extradition from Peru to the United States for criminal prosecution. (Doc. 1). For the following reasons, the Court will dismiss the petition for lack of jurisdiction.

## I.  Background

On February 24, 1993, a second superseding Indictment was issued in the United States District Court for the Southern District of Texas charging Gutierrez-Jaramillo and several co-defendants with conspiracy to import five kilograms or more of cocaine, and importing more than five kilograms of cocaine. (Doc. 9-1, pp. 3-15, *United States v. Gutierrez-Jaramillo*, Criminal No. 4:92-cr-270-003, Memorandum and Recommendation; Doc. 9-1, pp. 16-19, Judgment in a Criminal Case).

Gutierrez-Jaramillo states that he is a native and citizen of the Republic of Colombia,

however at the time of the extradition, he resided in Peru. (Doc. 1). He further states that before his extradition to the United States, he was convicted of drug trafficking in Peru and sentenced to fifteen (15) years of incarceration. (*Id.* at pp. 1-2). On October 2, 2002, Gutierrez-Jaramillo was paroled from his Peruvian sentence. (*Id.* at p. 2). Gutierrez-Jaramillo alleges that after being paroled, he was taken into Peruvian custody and held for eighty-seven (87) months pending his extradition to the United States. (*Id.*). He was subsequently extradited to the United States.

On December 24, 2009, Gutierrez-Jaramillo was arrested on the criminal charges in the Southern District of Texas. (Doc. 9-1, p. 22, Courtroom Minutes, Initial Appearance). Gutierrez-Jaramillo plead guilty to conspiracy to import five kilograms or more of cocaine, and importation of more than five kilograms of cocaine. On February 23, 2011, he was sentenced to a 210-month term of imprisonment followed by five years of supervised release. (Doc. 9-1, pp. 17-18, Judgment in a Criminal Case; Doc. 9-1, pp. 23-25, BOP SENTRY Report). His projected release date is April 25, 2025. (Doc. 9-1, p. 23, BOP SENTRY Report).

Gutierrez-Jaramillo appealed his sentence to the United States Court of Appeals for the Fifth Circuit. (Doc. 9-1, p. 4, *United States v. Gutierrez-Jaramillo,* Criminal No. 4:92-cr-270-003, Memorandum and Recommendation). On May 16, 2012, the Fifth Circuit affirmed the Judgment of Sentence. (*Id.*). Gutierrez-Jaramillo subsequently filed a Motion

to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 in the United States District Court for the Southern District of Texas. (Doc. 9-1, p. 26, Final Judgment). On November 1, 2013, the District Court for the Southern District of Texas denied the motion. (*Id.*).

## II. Discussion

Gutierrez-Aramillo challenges his extradition to the United States from Peru. The only issue that a petitioner may properly raise regarding his extradition in a writ for habeas corpus is whether "[h]e is in custody in violation of the Constitution or laws or treaties *of the United States*." 28 U.S.C. § 2441(c)(3) (emphasis added). In his petition, Gutierrez-Jaramillo alleges that he was unlawfully extradited from Peru in contravention of the treaty under which he was extradited.

The act of "state doctrine" holds that "American courts are precluded from 'inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory.'" *Gross v. German Foundation Indus. Initiative*, 456 F.3d 363, 391 (3d Cir. 2006) (quoting *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 401 (1964)). The American court must dismiss an action when the " resolution of a suit would require the court to declare invalid and ineffective as 'a rule of decision for the courts of this country' the official act of a foreign sovereign." *Gross*, 456 F.3d at 391-92 (citations omitted). In this case, Gutierrez-Jaramillo is essentially requesting that the Court determine the validity of

3

the Peruvian act in extraditing him to the United States. Determining whether the Peruvian government may lawfully authorize an extradition is a question for the courts of Peru. See Banco Nacional de Cuba, 376 U.S. at 416-20. Generally, federal courts must abstain from determining challenges to a foreign state's domestic law. "Every sovereign state is bound to respect the independence of every other sovereign state, and the courts of one country will not sit in judgment on the acts of the government of another, done within its own territory." Banco Nacional de Cuba, 376 U.S. at 416 (quoting Underhill v. Hernandez, 168 U.S. 250, 252 (1897)). To the extent that Gutierrez-Jaramillo is challenging the Peruvian government's decision to extradite him to the United States, this Court must respect the independence of Peru, and cannot declare that the laws of Peru were violated by the extradition.

Gutierrez-Jaramillo specifically challenges his extradition based upon the terms of the treaty under which he claims he was extradited. He asserts that he was extradited in violation of a treaty between the United States and the Republic of Colombia. He alleges that his extradition from Peru to the United States was illegal because the criminal acts which form the basis of his criminal charges in the United States occurred prior to December 17, 1997, the date he claims that an extradition treaty between the United States and Colombia was promulgated. (Doc. 1, p. 2). However, at the time of his extradition, Gutierrez-Jaramillo was residing in Peru, and he challenges an act of the Peruvian

government, not the Colombian government. During sentencing in the Southern District of Texas, counsel and Gutierrez-Jaramillo spoke to the Court prior to the imposition of the sentence, and each acknowledged that Gutierrez-Jaramillo was extradited pursuant to an extradition order signed by Peruvian authorities.[1] *See United States v. Gutierrez-Jaramillo,* Criminal No. 4:92-cr-270-003, at (Doc. 500, pp. 8-16). There is no indication that the Colombian government played any role in Gutierrez-Jaramillo's extradition from Peru to the United States.

Treaties are agreements between nations, and therefore an individual ordinarily may not challenge the interpretation of the treaty in the absence of an express provision of the treaty or an act brought by one of the signatory nations. *See United States ex rel. Saroop v. Garcia,* 109 F.3d 165, 167 (3d Cir. 1997). Thus, either the rendering state must object to the demanding state's actions or the treaty must expressly allow the challenge by an individual. *Id.* at 167-68. In the case at bar, there is no record that the Peruvian government or the Colombian government objected to Gutierrez-Jaramillo's extradition or his prosecution in the United States. *See United States v. Riviere,* 924 F.2d 1289 (3d Cir.

---

[1] Gutierrez-Jaramillo explained his extradition as follows:

> [T]he day I was going to be released, a letter from the US Embassy arrived in which they were asking me not to be released. Peruvian authorities were asked not to release me because some people were going to come and pick me up for extradition. The letter was from the US Embassy to Peruvian authorities.

*United States v. Gutierrez-Jaramillo,* Criminal No. 4:92-cr-270-003, at (Doc. 500, p. 13).

1991) (holding that the extradited person could not assert rights under the treaty in light of the express waiver by the Commonwealth of Dominica). In fact, the Peruvian government considered the extradition request and chose to grant it. The Peruvian government ultimately authorized and consented to Gutierrez-Jaramillo's extradition to the United States. Whether the extradition was lawful is not a question for this Court, but should instead be directed to Peru. Therefore, the Court lacks jurisdiction to address the claims in the petition for a writ of habeas corpus.

## III. Conclusion

Based on the foregoing, the Court will dismiss the habeas petition for lack of jurisdiction. A separate Order shall issue.

Date: October 12, 2017

Robert D. Mariani
United States District Judge